PROPRIETORS OF THE QUINCY CANAL *vs.* BRYANT B. NEWCOMB.

A company was incorporated with authority to make a canal of a depth and width sufficient for the passage of vessels not drawing more than nine feet of water. and to take the land of individuals therefor, on making them compensation, and to demand toll for the passage of all vessels through the canal, as soon as the same should be passable for vessels ; *provided,* that if the corporation should " not complete a canal as aforesaid, passable for vessels drawing nine feet of water, within three years," the act of incorporation should be void : The corporation made a canal within three years, and established the rate of toll ; and A.'s vessel, more than ten years afterwards, passed through the canal many times.  *Held,* in a suit by the corporation against A. to recover tolls, that A. could not show, either in bar of the action, or for the purpose of reducing damages, that the canal was not so constructed as to admit vessels drawing nine feet of water.

Where a corporation, which is authorized to demand a toll not exceeding a certain rate, at first establishes the toll at one rate, and afterwards at a higher rate, it is not necessary, in a suit to recover the higher rate of toll, that the corporation should show that the defendant had notice that the rate had been changed.

An individual cannot maintain an action against the incorporated proprietors of a canal for damages caused by their omission to construct the canal according to the requisitions of their act of incorporation, or their omission to keep the canal in repair, if his damage be such only as he suffers in common with all others.

Assumpsit to recover tolls. The first count in the plaintiffs' declaration alleged, that by their act of incorporation, (St. 1824, c. 150,) certain persons, with their associates, &c., were made a corporation, by the name of the Proprietors of the Quincy Canal, with power to make a canal for the passage of vessels, with convenient locks and gates, and a basin at the head of said canal, and also a road and wharves below, within three years from the passing of said act; and to ask and receive, for their sole benefit, of and from all vessels, boats, rafts, &c., passing through the locks of said canal, tolls not exceeding (among others) six cents per ton for every ton of stones ; that said proprietors, within said term of three years, made and completed said canal, with all the appurtenances, and have ever since kept and performed the terms and conditions of said act, and had long since voluntarily reduced the abovementioned rate of toll to five cents per ton ; that on divers days between the 1st of January 1841 and the 29th of January 1842, the defendant conveyed through the locks of said canal 4144 tons of stones, whereby he became liable to pay to the said proprietors the sum of $207·20, and, in consideration thereof, promised, &c. The second count was indebitatus assumpsit for $207·20, for lockage on 4144 tons of stones, at five cents per ton.

At the trial in the court of common pleas, the plaintiffs produced their act of incorporation, passed February 26th 1825, and two additional acts, viz. Sts. 1832, c. 106, and 1837, c. 203.

It appeared from the plaintiffs' book of records, that the toll originally established and charged was four cents per ton, and so remained till 1840, when it was changed to five cents. But there was no evidence that the defendant had any notice of this change, or knew of it.

The plaintiffs offered evidence to prove that the defendant transported the stones through their canal, as charged in their declaration, and that said canal was made within the time

24

required by their act of incorporation. It also appeared, by the plaintiffs' records, that the corporation was duly organized, and officers chosen.

The defendant then offered to show, in bar or in mitigation of damages, that said canal was never constructed in the manner required by the plaintiffs' act of incorporation ; that it was never so constructed or kept, as to be passable for vessels drawing nine feet of water ; that the lock was not so built as to admit the passage of such vessels through it ; that the basin was not constructed of the dimensions required by said act ; and that no suitable and convenient tow-path was ever made or kept. The defendant also offered to prove that he suffered great incon venience and injury in consequence of said canal's not being constructed and kept as required by said act of incorporation, and that it would have been more profitable to him to have paid full toll, if the canal had been constructed as required by said act, than to have used it, as it was, for nothing. The court ruled that this evidence was inadmissible.

The defendant contended that the plaintiffs could not maintain their action on the second count, and that the first count was insufficient. But the court ruled that the action might be maintained on the second count. A verdict was returned for the plaintiffs, for their whole claim, and the defendant alleged exceptions to the rulings of the court.

The parts of the plaintiffs' act of incorporation, on which the defendant relied, are copied in the margin.*

---

* By § 3, provision was made for the plaintiffs to take land, (on making compensation to the owners thereof,) " through and over which they may dig, make and complete a canal, of suitable depth and width for the passage of vessels not drawing more than nine feet of water," &c.

" SECT. 8. The said corporation shall be entitled to ask and receive, for their sole benefit, of and from all vessels, boats," &c. &c., " passing through the locks of said canal, fees or toll, not exceeding the following rates, viz. for every ton of stones, six cents per ton," &c. &c. " And said toll shall commence as soon as said canal shall be passable for vessels as prescribed by said corporation : Provided, however, that the fees or toll shall be, at all times hereafter, subject to the revision or alteration of the legislature.

" SECT. 9. If said corporation shall not complete a canal as aforesaid, passable for vessels as above described, drawing nine feet of water, within three years from and after the passing of this act, the same shall be void."

*Wilkinson*, for the defendant. The right of the plaintiffs to take toll was to commence when the canal should be made in the manner prescribed by their act of incorporation. This was a condition precedent. The plaintiffs' charter is the only law which gives them power to demand toll; and that law prescribes the terms upon which such power shall be exercised *Nichols* v. *Bertram*, 3 Pick. 342. *Fales* v. *Whiting*, 7 Pick. 225. *Hartford & Dedham Turnpike* v. *Baker*, 17 Pick. 432. *Lord* v. *Fifth Mass. Turnpike*, 16 Mass. 106. *Middle Bridge* v. *Brooks*, 1 Shepley, 391. *Turnpike Society* v. *Hosmer*, 12 Connect. 361. *Life & Fire Ins. Co.* v. *Mechanic Fire Ins. Co.* 7 Wend. 31. *North River Ins. Co.* v. *Lawrence*, 3 Wend. 482. *Wales* v. *Stetson*, 2 Mass. 143. In an action for tolls, brought by the *Bear Camp River Co.* v. *Woodman*, 2 Greenl. 404, which will be cited for the plaintiffs, the evidence on the question whether the river had been properly cleared, as required by the act incorporating the plaintiffs in that case, was left to the jury The clearing of the river, however, was not a condition prece-dent to their right to take toll.

The evidence offered by the defendant, if not admissible in bar of the action, was admissible in mitigation of damages. The trial proceeded upon the ground that the plaintiffs were en-titled to recover in general indebitatus assumpsit. No evidence was offered in support of the special count. The action of in-debitatus assumpsit is an equitable remedy to recover what in good faith the plaintiffs ought to receive; and they ought to re cover only so much as the use of the canal was reasonably worth, under all the circumstances. The defendant made no express promise; nor was any agreement or understanding, as to the rate of toll, shown at the trial. If the plaintiffs could recover at all, for the use of a canal constructed as their charter required, and upon a mere general indebitatus assumpsit, they must stand like any other plaintiff, and recover only a reasonable compensa-tion This would make the offered evidence admissible. It was important to inquire into the construction, situation and conve-nience of the canal; for the reasonableness of the rate of tol depends entirely upon these considerations.

The verdict was wrong, in allowing the plaintiffs five cents per ton, instead of four, which was the rate first established. If the plaintiffs were entitled to a verdict, under the circumstances of the case, upon an implied assumpsit, there could be no implication beyond four cents per ton. Notice of the change should be brought home to the defendant, in some way, in order to bind him. He had a right to suppose that the original rate of toll was continued, until some notice was given of the change. It may be that he would not have used the canal, if he had known that an increased rate of toll was to be demanded. It may be doubtful whether the plaintiffs had a right to raise the rate of toll, after having once established it. At any rate, the change must be publicly made.

The *Sts.* of 1832, *c.* 106, and 1837, *c.* 203, cannot operate to release the plaintiffs from their obligation to make and keep their canal of the dimensions required by their act of incorporation. The first of these statutes empowered the plaintiffs to place spiles in or near the channel of Town River, in Quincy, to facilitate navigation. The other statute authorized the plaintiffs to assess $30 on the shares of their capital stock, in addition to the sum specified in their charter. In neither of them is there any express or implied waiver of the requisitions of the charter. An act, to have this effect, must show upon its face, or by necessary implication, that such was the intent of the legislature. *People* v. *Kingston & Middletown Turnpike*, 23 Wend. 193.

*Gourgas*, for the plaintiffs. The plaintiffs are not bound to show, in this action, that they have performed all the various conditions, and complied with all the requisitions of their charter; nor can the defendant show, in bar of the action, that the plaintiffs have not so done. A defendant sued by a corporation cannot show, in defence, that the corporation has forfeited its corporate rights by misuser or non-user. Advantage of the forfeiture can be taken only on a process in behalf of the State. Nor can the debtors of a corporation absolve themselves from their liability, because the corporation may have forfeited its charter by exercising the powers granted to it before it has done what its charter requires. *The People* v. *Manhattan Co.* 9

Wend. 351.    *Bear Camp River Co.* v. *Woodman*, 2 Greenl. 404
*Day* v. *Stetson,* 8 Greenl. 372.    *Vernon Society* v. *Hills,* 6 Cow
23.    *All Saints Church* v. *Lovett,* 1 Hall, 198.    *State of Ver-
mont* v. *Society,* 1 Paine, 652.    *Chester Glass Co.* v. *Dewey,* 16
Mass. 102.    *Tar River Navigation Co.* v. *Neal,* 3 Hawks, 520
*Buncombe Turnpike Co.* v. *McCarson,* 1 Dev. & Bat. 306.
*Searsburgh Turnpike Co.* v. *Cutler,* 6 Verm. 323.    *Canal Co.* v.
*Rail Road Co.* 4 Gill & Johns. 121. *Lehigh Bridge Co.* v.
*Lehigh Coal & Navigation Co.* 4 Rawle, 9.    A forfeiture in-
curred, by a corporation, by non-performance of a condition in
its charter, may be waived by the legislature by subsequent legis-
lative acts recognizing the continued existence of the charter.
9 Wend. *ubi sup.    Commonwealth* v. *Union F. & M. Ins. Co.*
5 Mass. 232.    If the plaintiffs had incurred a forfeiture, it was
waived by *Sts.* 1832, *c.* 106, and 1837, *c.* 203.

The plaintiffs had a right by their charter to charge toll at a rate
not exceeding six cents per ton, subject to alteration by the legis-
lature, and were not bound to continue the rate at four cents, mere-
ly because they so established it at first.    The rate first charged
was established by vote, and the change by vote.    *Non constat*
that the defendant had any more notice of the first vote than of
the last.    The evidence offered by him to show that the rate of
toll legally established was higher than he ought to pay was
rightly rejected.

General indebitatus assumpsit lies for tolls; *Seward* v. *Baker,*
1 T. R. 616; and the evidence given by the plaintiffs therefore
supported the second count as well as the first.

SHAW, C. J.    It being proved or admitted that the defend-
ant's vessels did pass the plaintiffs' canal and transport the com-
modities, as averred in their declaration, it becomes necessary
to consider the several grounds of defence.

1. It is insisted by the defendant that the right of the plain-
tiffs to take toll is conditional, by their act of incorporation, (*St.*
1824, *c.* 150,) depending on their first making a canal suffi-
cient to admit a vessel of nine feet draught of water.    By the
eighth section of that act, " said toll shall commence as soon as
said canal shall be passable for vessels, as prescribed by said

corporation," subject to the revision or alteration of the toll by the legislature. The ninth section provides that if the corporation shall not complete a canal passable for vessels drawing nine feet of water, within three years, the act shall be void. Taking the two sections together, the provision is, that the corporation may commence taking toll at any time, within three years, if the canal is completed within that time; but if not then completed, the act shall be void. We do not understand that a compliance with all the provisions of the act is a condition precedent to the right of demanding toll in each particular case.

The construction contended for by the defendant would be attended with extreme inconvenience. The consequence would be, that the plaintiffs' right could be drawn in question, and put in issue, every time they demanded a toll.

This canal is a public highway. It was authorized for the public use and accommodation, with authority in the plaintiffs, by § 3 of their act of incorporation, to take private property for such use. And every individual has a right to use the canal, on paying the toll. Levying a toll on a public highway, whether by land or water, is a claim of franchise; and whoever makes such claim without authority is liable to an information in the nature of a *quo warranto*. So if the canal is not made according to the provisions of the act of incorporation, it is the failure to perform a public duty, for which indictment or information will lie.

2. If the canal was opened, and toll claimed, and the public did not interfere, and the defendant used the canal, he thereby subjected himself to the payment of the toll. By demanding the toll, the plaintiffs claim to have complied with the conditions and provisions of their act of incorporation; and the defendant, by using their canal, is estopped to deny their right to the payment of the toll; although they might be proceeded against by *quo warranto* for the repeal and dissolution of their charter, or by indictment for a misdemeanor in not keeping it in repair.

3. Another ground of objection to the plaintiffs' right to toll is, that the defendant had no notice that they had raised the

toll.   It appears that there was the same evidence of the in-crease of the toll to five cents, as there was of the original estab-lishment of it at four cents; namely, the vote of the corporation But besides; a toll implies a cash payment at each passage.   If the defendant had paid cash at each passage, he would have known of the increase, or at least he could have been misled but once; and if he continued, for a long time, to pass without inquiring, he must be presumed to have assented to the pay · ment of the established toll.

4.  It was next insisted that the defendant should have been allowed to go into evidence to show that he had sustained damage by means of the failure of the plaintiffs to make their canal fit for vessels of nine feet draught of water.   This was offered in various forms, but they all resolved themselves into an attempt to prove damage arising from this cause.

Supposing the defendant would have a right to set off such damage as he could sustain an action for, in order to avoid circuity of action — a supposition most favorable for the defend-ant — we are of opinion that the evidence was rightly rejected; because we think no action could be maintained on any of the grounds stated, if the defendant had been suing the plaintiffs in a cross action for such damage.   If the defendant suffered any damage from this cause, or if he had suffered damage from the filling up of the canal, and want of cleansing, by means of which he was unable to enter with a vessel of nine feet draught of water, it would have been a damage suffered in common with all other members of the community, and therefore redress must be sought by a public prosecution.   Where one suffers in common with all the public, although, from his proximity to the obstructed way, or otherwise from his more frequent occasion to use it, he may suffer in a greater degree than others, still he cannot have an action, because it would cause such a multi-plicity of suits as to be itself an intolerable evil.   But when he sustains a special damage, differing in kind from that which is common to others — as where he falls into a ditch unlawfully made in a highway, and hurts his horse, or sustains a personal damage — then he may bring his action.   *Stetson* v. *Faxon,*

19 Pick. 147. The case of *Riddle* v. *Proprietors of Locks &
Canals*, 7 Mass. 169, seemed at first to be much like the
present; but upon close examination it is found to be quite
distinguishable. There, although the declaration averred a
loss arising from the failure of the defendants to dig their canal
of the depth required by their act of incorporation, yet it also
alleged a damage from its filling up and being in want of deep-
ening and cleansing. And Parsons, C. J., in delivering the
opinion of the court, on a motion in arrest of judgment, held the
action to be maintainable, not upon the ground that the plaintiff
sustained damage by means of the original failure of the pro-
prietors to make the canal of the required depth, but of their
neglect of duty in not keeping it cleansed and free from ob-
structions after it had been so made. And again: The plaintiff
in that case proved not merely a damage arising from the fact
that the canal had not been made of the required depth, but
also that he entered it with a raft, and that by means of the
shallowness of the water, his raft grounded, and being detained
there during a storm, a part of his raft was lost. In that case,
therefore, there was a special damage — a damage arising from
the want of due care in cleansing the canal and maintaining it
in a fit condition for use — and upon these grounds the action
was maintained. But in the present case, all the defendant's
offers of evidence were to show that he had sustained damage
in his business from the original failure of the plaintiffs to con-
struct the canal in the manner required by their act of incorpo-
ration. If they did fail in that particular, it was a failure of
duty, by reason of which the defendant suffered no special
damage peculiar to himself, but one which could be redressed
by a public prosecution only. If the defendant could not sus-
tain an action for such damage, we are of opinion that he could
not claim such damage by way of set-off in this suit.

It was said that as the plaintiffs had declared in indebitatus
assumpsit, the defendant had a right to show that he received
less benefit than he should have received. Were this a decla-
ration on a *quantum meruit*, there would have been more weight
'n this argument. But it is for a sum certain, due for tolls

fixed by law, where the whole is due, or nothing ; and the rule of *quantum meruit* does not apply.  This general mode of declaring is allowable when nothing remains, on the part of the defendant, but the duty of paying a certain sum of money. 2 Stark. Ev. 95.

*Judgment for the plaintiffs.*